## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NORTH SUBURBAN CHIROPRACTIC CLINIC, LTD., an Illinois corporation, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| | ) | Case No. 13-cv-6897 |
| Plaintiff, | ) ) | District Judge John F. Grady |
| v. | ) ) | Magistrate Judge Mary M. Rowland |
| RX SECURITY INC., a Canadian corporation, | ) ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Greg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.470.6588
www.siprut.com

*Attorneys for Plaintiff and the
Proposed Settlement Class*

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................1

II.   PROCEDURAL HISTORY ...........................................................................2

III.  THE PROPOSED SETTLEMENT ...............................................................4

        A.  Certification Of the Proposed Settlement Class....................................4

        B.  Class Relief .............................................................................................4

        C.  Class Notice ............................................................................................5

        D.  Service Awards to Class Representatives ...............................................5

        E.  Attorneys' Fees and Expenses ...............................................................6

IV.  THE PROPOSED SETTLEMENT IS FAIR AND SHOULD BE PRELIMINARILY APPROVED ...........................................................................................................6

        A.  The Proposed Settlement Satisfies the Fairness Criteria ....................6
            1.  Strength of the Case ...................................................................7
            2.  Risk, Expense, & Complexity of Case .......................................8
            3.  The Opinion of Counsel .............................................................9
            4.  Extent of Discovery....................................................................9
            5.  Presence of Governmental Participants....................................10

V.   THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED; THE FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS SHOULD BE APPROVED; AND, A HEARING REGARDING FINAL APPROVAL OF THE SETTLEMENT SHOULD BE SCHEDULED .......................................................10

        A.  The Settlement Class Should be Provisionally Certified ...............10
            1.  Numerosity – F.R.C.P. 23(a) ..................................................11
            2.  Commonality/Predominance – F.R.C.P. 23(a)(2) and 23(b)(3) .............12
            3.  Typicality – F.R.C.P. 23(a)(3) ................................................14
            4.  Adequacy of Representation – F.R.C.P. 23(a)(4)....................14
            5.  Superiority – F.R.C.P. 23(b)(3) ..............................................15

        B.  The Form and Method of Service of Class Notice Should Be Approved........16

        C.  The Court Should Schedule A Hearing For Final Settlement Approval .........17

VI.  CONCLUSION.............................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**UNITED STATES SUPREME COURT CASES**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).......................................................10, 11

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).........................................................16, 17

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011)...............................................................................................................12

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) ......................................................................................................6

*Butler v. Sears, Roebuck & Co.,*
2012 WL 5476831 (7th Cir. Nov. 13, 2012) ..............................................................................13

*Donovan v. Estate of Fitzsimmons,*
778 F.2d 298 (7th Cir. 1985) ......................................................................................................8

*In re Corrugated Container Antitrust Litigation,*
643 F.2d 195 (5th Cir. 2010) .....................................................................................................10

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) ......................................................................................................6

*Patterson v. Gen. Motors Corp.,*
631 F.2d 476 (7th Cir. 1980) .....................................................................................................12

*Rosario v. Livaditis,*
963 F.2d 1013 (7th Cir. 1992) ...................................................................................................12

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.,*
463 F.3d 646 (7th Cir. 2006) ..................................................................................................6, 7

*Szabo v. Bridgeport Machines, Inc.,*
249 F.3d 672 (7th Cir. 2001) .....................................................................................................11

*Williams v. Chartwell Fin. Serv., Ltd.,*
204 F.3d 748 (7th Cir. 2000) .....................................................................................................11

**UNITED STATES DISTRICT COURT CASES**

*Fletcher v. ZLB Behring LLC,*
245 F.R.D. 328 (N.D. Ill. 2006)..................................................................................................13

*Gomez v. Ill. State Bd. of Educ.,*
117 F.R.D. 394 (N.D. Ill. 1987)..................................................................................................15

*Hinman v. M and M Rental Ctr., Inc.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) ....................................................................14

*In re AT&T Mobility Wireless Data Services Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) .............................................................................7

*In re Neopharm, Inc. Securities Litigation*,
225 F.R.D. 563 (N.D. Ill. 2004)............................................................................14

*Kessler v. Am. Resorts Int'l*,
2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ..........................................................6

*Maxwell v. Arrow Fin. Servs., LLC*,
2004 WL 719278 (N.D. Ill. March 31, 2004) ........................................................12

*Pope v. Harvard Banchares, Inc.*,
40 F.R.D. 383 (N.D. Ill. 2006)..............................................................................12

*Radmanovich v. Combined Ins. Co. of Am.*,
216 F.R.D. 424 (N.D. Ill. 2003).............................................................................14

*Scholes v. Stone, McGuire, & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992).............................................................................12

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .............................................................6, 9, 10

*Smith v. Nike Retail Servs., Inc.*,
234 F.R.D. 648 (N.D. Ill. 2006).............................................................................11

*Whitten v. ARS Nat'l Servs. Inc.*,
2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) ........................................................11

## STATUTES AND FEDERAL RULES

28 U.S.C. § 1715 ....................................................................................................10

47 U.S.C. § 227 ........................................................................................................1

Fed. R. Civ. P. 23 .............................................................................................*passim*

## MISCELLANEOUS

MANUAL FOR COMPLEX LITIGATION
(4th ed. 2004) ...................................................................................................11, 17

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS
(4th ed. 2001). ............................................................................................11, 12, 16

Pursuant to Fed. R. Civ. P. 23, Plaintiff North Suburban Chiropractic Clinic, Ltd. ("Plaintiff"), by its counsel, respectfully submits the following Motion for Preliminary Approval of Proposed Class Settlement, and moves for an Order (1) preliminarily approving the Agreement[1] as being fair, reasonable, and adequate; (2) preliminarily approving the form, manner, and content of the Notice and Claim Form; (3) setting the date and time of the Fairness Hearing for no earlier than 100 days from the date preliminary approval is granted; (4) provisionally certifying the Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only ("Settlement Class"); (5) provisionally appointing Plaintiff as representative of the Settlement Class; and (6) provisionally appointing Joseph J. Siprut and Siprut PC as Class Counsel.

## I.    INTRODUCTION

Plaintiff and Defendant Rx Security Inc. ("Rx Security") (collectively, the "Parties") have entered into a Settlement Agreement in the above-referenced matter. (Exhibit 1 attached hereto.) The Settlement Agreement—a product of extensive negotiations—settles the dispute relating to alleged advertisements sent to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

***The Settlement Fund is $1,000,000***, not including the value of prospective relief. Under the terms of the Settlement Agreement, each Class Member may submit an Approved Claim for $20.00—cash—to be paid from the Settlement Fund. If the Settlement Administrator receives up to 1,000 Approved Claims, then each associated Class Member will receive $20.00. If the Settlement Administrator receives more than 1,000 claims, then each associated Class Member will receive a pro rata share of the sum equal to ($20,000 + $10.00 for each Approved Claim

---

[1] Unless otherwise stated herein, capitalized terms shall have the same meaning as provided in the Parties' Class Action Settlement Agreement, attached hereto as Exhibit 1.

beyond 1,000), up to a maximum aggregate sum of $750,000. For example, if 1,100 Approved Claims are received, each associated Class Member will receive $19.09. If 2,000 claims are received, then each associated Class Member will receive $15.00. If 74,000 approved claims are received, then each associated Class Member will receive $10.14. Accordingly, the Defendant's maximum liability under this Agreement after payment of (i) the total amount of Approved Claims, (ii) Settlement Notice and Administrative Expenses, (iii) the Fee Award, and (iv) incentive award to the Class Representative amounts shall not exceed one million dollars ($1,000,000).

Although both sides believe their respective positions in the action are meritorious, they have concluded that, due to the uncertainties and expense of protracted litigation, it is in the best interest of Plaintiff, the putative Settlement Class, and Rx Security to resolve this action on the terms provided in the proposed Settlement Agreement attached hereto.

Moreover, Rx Security's lack of meaningful financial resources leaves no doubt that this Settlement Agreement is in the best interest of the Settlement Class. Throughout months of negotiations, Rx Security provided financial records to Plaintiff establishing that Rx Security could not—by itself—possibly afford a meaningful class settlement. Nevertheless, Class Counsel's diligence resulted in the contribution of funds from an insurance policy held by Rx Security. Without that contribution, it is certain that class-wide relief would not be available. Put simply, the fact that there is *any* relief for the putative Settlement Class is virtual windfall.

## II.      PROCEDURAL HISTORY

A.      Plaintiff filed its class action complaint ("Complaint") on September 25, 2013 against Rx Security. The case is currently pending before this Court. On behalf of itself and a proposed class of all individuals or entities in the United States who were sent facsimile advertisements from or on behalf of Rx Security or who own the fax machines to which the

facsimiles were sent, Plaintiff alleged that Rx Security sent (or had sent on its behalf) facsimile advertisements to unwilling recipients in violation of the TCPA.

     **B.**     Soon after the filing of the Complaint, the Parties began settlement negotiations through numerous telephonic conferences and written correspondence.

     **C.**     Between November 2013 and January 2014, Rx Security filed several motions for extensions to answer to provide additional time to reach a settlement.

     **D.**     During this time, the Parties considered various settlement options. Initially, Rx Security's lack of any meaningful assets initially indicated that class-wide relief was simply not available. Undeterred, the Parties spent the next several months discussing whether additional funds were available from an insurance policy, so as to provide class-wide relief. Based on these discussions and the Parties' efforts, Rx Security was able to access additional funds to provide meaningful relief to the proposed Settlement Class—funds that would otherwise not be available.

     **E.**     On March 4, 2014, Rx Security filed its Answer to the Complaint.

     **F.**     By April 2014, the Parties reached an agreement in principle as to settlement for class-wide relief, and on May 28, 2014, the Parties finalized that agreement.

     **G.**     Thus, after nearly seven months of settlement discussions, the Parties finally agreed upon all key terms of the proposed settlement.

     **H.**     After reaching agreement on the material terms of the class-wide settlement structure, the Parties then spent several more weeks exchanging drafts of a final, written settlement agreement. After many exchanges of drafts and edits, the Parties were finally able to agree to the form and content of a settlement agreement that has now been fully executed and attached hereto.

### III.    THE PROPOSED SETTLEMENT

The proposed settlement provides the following:

### A.  Certification of the Proposed Settlement Class

The Plaintiff requests that the Court, for the purposes of settlement, certify a Settlement Class defined as:

> All individuals or entities in the United States or its Territories who were sent one or more facsimile advertisements from or on behalf of Defendant Rx Security Inc. or who own the fax machines on which the facsimiles were received.
>
> The Settlement Class does not include: (1) Rx Security and its subsidiaries and affiliates, employees, officers, directors, agents, and representatives and their family members; (2) Class Counsel; and (3) the judges who have presided over the Litigation.

### B.  Class Relief

The Settlement establishes the following relief for Settlement Class Members:[2]

- **Payments Available to All Class Members.** Class Members shall have until the Claims Deadline to submit an Approved Claim. Rx Security agrees to pay or cause to be paid from the Settlement Fund a sum of up to twenty dollars ($20.00) per Approved Claim. There can be only one Approved Claim per person, business, and/or facsimile line regardless of the number of Class Members who use that facsimile line, and regardless of number of times Rx Security may have sent a facsimile to that facsimile number. Thus, the maximum benefit per fax number is $20.00.

- **Pro Rata Reduction:** If the Settlement Administrator receives up to 1,000 Approved Claims, then each associated Class Member will receive $20.00. If the Settlement Administrator receives more than 1,000 claims, then each associated Class Member will receive a pro rata share of the sum equal to ($20,000 + $10.00 for each Approved Claim beyond 1,000), up to a maximum aggregate sum of $750,000. For example, if 1,100 Approved Claims are received, each associated Class Member will receive $19.09. If 2,000 claims are received, then each associated Class Member will receive $15.00. If 74,000 approved claims are received, then each associated Class Member will receive $10.14. Accordingly, Rx Security's maximum liability under this Agreement after payment of (i) the total amount of Approved Claims, (ii) Settlement Notice and Administrative Expenses, (iii) the Fee Award, and (iv) incentive award to the Class Representative amounts, shall not exceed one million dollars ($1,000,000).

---

[2] All defined terms in this brief are intended to have the definitions assigned to them in the Settlement Agreement.

- **Prospective Relief:** As part of this settlement, Rx Security agrees not to conduct any future marketing activities by means of unsolicited facsimile transmission in the United States or its Territories.

## C. Class Notice

Subject to the Court granting Preliminary Approval of the Settlement and Settlement Agreement, Rx Security and the Settlement Administrator will provide the Settlement Class with notice of the proposed settlement by the following methods:

- **Direct Notice:** No later than twenty-one (21) days after Preliminary Approval, Rx Security Inc. shall, based upon a review of the business records and data in their possession, custody or control, disseminate the Notice by Fax, substantially in the form of Exhibit B hereto, to any and all reasonably identifiable Persons who are potential members of the Settlement Class directing them to the Settlement Website and/or the toll-free telephone number to obtain a Class Notice and Claim Form. If the Fax Notice is logged as undeliverable, Rx Security Inc. shall, based upon a review of the business records and data in their possession, custody or control, send an E-Mail Notice substantially in the form of Exhibit B hereto, notifying the Class Member of the Settlement and directing them to the Settlement Website and/or the toll-free telephone number to obtain a Class Notice and Claim Form.

- **Settlement Website:** Within twenty-one (21) days following the entry of the Preliminary Approval Order, Notice shall be provided on a website at www.PrescriptionPadsTCPASettlement.com, which shall be administered by the Settlement Administrator. On the Settlement Website, Class Members can download the long form Notice attached as Exhibit C to the Settlement Agreement.

In order to receive one of the benefits described above and become part of the class member payment list, the Settlement Class Member must submit a Claim Form that is (a) timely, and (b) valid as determined by the Settlement Administrator, based upon the claims process set forth in Section 5 of the Settlement Agreement.

## D. Service Awards to Class Representative

Subject to Court approval, the class representative will request a service award of $5,000 in recognition of its contributions to the Class and the risk it incurred in commencing the action, both financial and otherwise.

### E.  Attorneys' Fees and Expenses

The Parties have agreed that Rx Security will not oppose Class Counsel's request for total fees and expenses in the amount of $175,000. The Court does <u>not</u> need to award or otherwise rule on Class Counsel's fees at this time. Class Counsel will file a motion for attorneys' fees separately, pursuant to the schedule in the Proposed Preliminary Approval Order, and will support the unopposed request for fees in detail.

## IV.  THE PROPOSED SETTLEMENT IS FAIR AND SHOULD BE PRELIMINARILY APPROVED.

### A.  The Proposed Settlement Satisfies The Fairness Criteria.

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). Although the standards to be applied at the preliminary approval stage "are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l*, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)). The factors considered at this stage include: (i) the strength of the plaintiff's case compared to the amount of the settlement; (ii) an assessment of the likely complexity of trial; (iii) the length and expense of the litigation; (iv) the amount of opposition to the settlement among affected parties; (v) the opinion of counsel; and (vi) the stage of the proceedings and amount of discovery completed. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011) (citing *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).

1.       **Strength of the Case**

Plaintiff alleges that Rx Security violated the TCPA by sending fax advertisements to unwilling recipients. Plaintiff contends that Rx Security did so without prior express consent and without any established business relationship. Accordingly, the Complaint alleges that Plaintiff and the Class are entitled to statutory damages, actual damages, injunctive relief, and other equitable relief this Court deems appropriate.

Rx Security denies liability and contends that it has a number of affirmative defenses that would defeat Plaintiff's claim on both substantive and procedural grounds. For instance, Rx Security asserts that Plaintiff's claims are barred because Plaintiff and the class members acquiesced to receive faxes from Rx Security. Under the TCPA, prior express consent would prevent Plaintiff or any Class Member from recovering relief. Rx Security also asserts that the facsimiles in question do not qualify as "advertisements" under the TCPA. In addition, Rx Security asserts Plaintiff is barred by various equitable doctrines under Rule 8(c)(1) of the Federal Rules of Civil Procedure. Furthermore, Rx Security asserts that Plaintiff has failed to join all necessary parties, and that Plaintiff lacks standing. Clearly, one of the factors to be considered as to the fairness of a class action settlement is a defendant's willingness and ability to mount just such a vigorous defense.

One of the principal factors the Court considers in the course of preliminary approval is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653. In doing so, however, "courts should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (internal quotations omitted). Moreover, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide

a complete victory to the plaintiffs." *Id.* (internal quotations omitted). Rather, an integral part of the Court's strength-versus-merits evaluation "is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985).

As explained above, the Settlement allows Settlement Class Members to receive monetary and prospective relief. While Plaintiff believes that its claim for maximum statutory damages under the TCPA is strong, Plaintiff is also aware of the inherent risks and costs of continuing with complex litigation of this nature. If Rx Security were to prevail on any of its asserted defenses, Settlement Class Members, including Plaintiff, would receive no relief *at all*. Given this possibility, a monetary payment of $20 per Settlement Class Member, in addition to Rx Security refraining from engaging in any future marketing activities by means of unsolicited facsimile transmission, is a meaningful achievement. Accordingly, the Settlement provides a tangible benefit to all those affected by Rx Security's alleged violation of the TCPA.

### 2. Risk, Expense, & Complexity of Case

Due to the nature of Plaintiff's case, trial will require the collection of evidence and witness testimony from across the country. Both Parties would examine a number of Rx Security's current and former employees. Rx Security intends to assert a number of affirmative defenses that it contends bar Plaintiff's claim in whole or in part. Rx Security would present — and Plaintiff would necessarily attempt to rebut — evidence and testimony on whether individual Class Members provided prior express consent to or had an existing business relationship with Rx Security. The uncertainty as to whether these affirmative defenses apply in this case creates substantial risk for both sides. Plaintiff and proposed Class Counsel also recognize that the expense, duration, and complexity of protracted litigation would be substantial, and would

require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses.

### 3. The Opinion of Counsel

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23." *Schulte*, 805 F. Supp. 2d at 586-87. Here, Class Counsel has extensive experience in consumer class actions and complex litigation. (Siprut Aff., ¶ 11.) Based upon proposed Class Counsel's analysis and the information obtained from Rx Security, monetary relief of $20 per Settlement Class Member—with a total value of $1,000,000 million—and prospective relief represent a significant recovery for the Settlement Class, especially when weighed against Rx Security's anticipated defenses and the inherent risks of litigation.

Moreover, the significance of the recovery for the Settlement Class is further emphasized by Rx Security's limited financial resources. Simply put, Rx Security was not financially capable of funding *any* form of class-wide relief. Class Counsel, however, made significant efforts to find other financial resources that would provide class-wide relief. The Parties exchanged information and held numerous discussions which led to the availability of funds contributed under an insurance policy held by Rx Security. Given that the Settlement is thus a virtual windfall, Class Counsel believes that the Settlement is beneficial to the Settlement Class and meets the class-certification requirements of Rule 23.

### 4. Extent of Discovery

Based upon information exchanged by the Parties, Plaintiff believes it possesses the evidence needed to evaluate the strengths and weaknesses of the case. Rx Security has provided Plaintiff with information relating to the nature of the faxes and empirical data concerning the

number of faxes sent. As such, counsel for each party has sufficient information to assess the strengths, weaknesses, and likely expense of taking this case to trial.

While the Parties have informally exchanged information critical to evaluating the strength of Plaintiff's contentions (and Rx Security's defenses), the amount of discovery taken is not a prerequisite to a class action settlement. Courts have noted that, "the label of 'discovery' [either formal or informal] is not what matters. Instead, the pertinent inquiry is what facts and information have been provided." *Schulte*, 805 F. Supp. 2d at 587 (internal citation omitted). *See also In re Corrugated Container Antitrust Litigation,* 643 F.2d 195, 211 (5th Cir. 1981) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted." (emphasis omitted)). Here, information more than sufficient to make a reasonable and informed decision has been procured, meaning that there was a reasonable, informed basis to evaluate the Settlement.

### 5. Presence of Governmental Participants

Although there is no governmental entity participating in this matter as of this time, full and complete notice is being provided to all appropriate state and federal authorities. Rx Security will provide such notice, which will include all appropriate information and documents required by the Class Action Fairness Act, 28 U.S.C. § 1715(b).

## V. THE SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED; THE FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS SHOULD BE APPROVED; AND, A HEARING REGARDING FINAL APPROVAL OF THE SETTLEMENT SHOULD BE SCHEDULED.

### A. The Settlement Class Should be Provisionally Certified.

Before preliminary approval of a class action settlement can be granted, the Court must determine that the proposed class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*,

-10-

521 U.S. 591, 620 (1997); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.632. Federal Rule of Civil Procedure 23(a) provides that a class may be certified if (i) the class is so numerous that joinder of all members is impractical, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of those of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Williams v. Chartwell Fin. Serv., Ltd*., 204 F.3d 748, 760 (7th Cir. 2000).

Once the requirements of Rule 23(a) have been met, the proposed class must then satisfy at least one of the three subsections of Rule 23(b). *Amchem*, 521 U.S. at 614. In this case, Plaintiff seeks certification of the Settlement Class under Rule 23(b)(3), which requires that (i) the questions of law or fact common to all class members predominate over issues affecting only individual members, and (ii) the maintenance of a class action be superior to other available methods for the fair and efficient adjudication of the controversy. *Id*. at 615; *Szabo v. Bridgeport Machines, Inc*., 249 F.3d 672, 676 (7th Cir. 2001).

As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.[3]

1.     **Numerosity — Federal Rule of Civil Procedure 23(a).**

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no specific number required, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006); *see also* 3 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2001). Instead, courts are permitted "to make common-sense assumptions that support a finding

---

[3] As detailed in the Settlement Agreement, Rx Security does not oppose the request for class certification solely for the purposes of settlement.

-11-

of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, 2004 WL 719278, at *2 (N.D. Ill. March 31, 2004). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Pope v. Harvard Banchares, Inc*., 240 F.R.D. 383, 387 (N.D. Ill. 2006).

In this case, approximately 84,000 faxes were sent regarding Rx Security's products. (Siprut Aff. ¶ 10.) Accordingly, the Class satisfies the numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands. . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

## 2. Commonality/Predominance — Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not themselves "defeat the certification of a class." *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980); *cert. denied*, 451 U.S. 914 (1980); *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993). In fact, the threshold for commonality is not high. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Rather, commonality exists if a common nucleus of operative fact exists, even if as to one question of law or fact. *Whitten v. ARS Nat'l Servs. Inc.*, 2001 WL 1143238, *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "defendants have engaged in standardized conduct toward the members of the proposed class."); *see Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (stating that "commonality requires that the claims of the class simply "depend upon a common contention . .

. of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

As alleged in Plaintiff's Complaint, the Settlement Class shares common questions of fact and law that predominate over issues affecting only individual members of the Settlement Class. Those common factual and legal issues for the Settlement Class include (1) whether Rx Security engaged in a pattern of sending fax advertisements; (2) the manner in which Rx Security compiled or obtained its list of fax numbers; and (3) whether Rx Security violated the TCPA.

Additionally, Rule 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). "Predominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 2012 WL 5476831, at *2 (7th Cir. Nov. 13, 2012). "A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not a cost to any one of them large enough to justify the expense of an individual suit." *Id.* In this case, common questions predominate for the Class because Rx Security's alleged unlawful conduct presents common questions with regard to all members of the proposed Settlement Class. Thus, the predominance requirement is satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence of Rx Security's conduct.

### 3.    Typicality — Federal Rule of Civil Procedure 23(a)(3).

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if the plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is liberally construed." *In re Neopharm, Inc. Securities Litigation*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

Here, Plaintiff and the Settlement Class all received fax advertisements, and alleged that Rx Security sent or had sent on its behalf the faxes in violation of the TCPA, thereby entitling Plaintiff and the Settlement Class to actual and statutory damages and equitable relief. Moreover, there are no defenses that pertain to Plaintiff that would not also pertain to the Settlement Class. Accordingly, Plaintiff's claims are typical of the other Settlement Class members' claims.

### 4.    Adequacy of Representation — Federal Rule of Civil Procedure 23(a)(4).

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, class representatives must establish that: (1) their claims are not in conflict with those of the proposed class, (2) they have sufficient interests in the outcome of the case, and (3) they are represented by experienced, competent counsel. *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by

class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Here, Plaintiff's interests are consonant with the interests of the Settlement Class— obtaining relief from Rx Security for its marketing of its products by facsimile transmissions, and ensuring that Rx Security does not continue such conduct in the future. Plaintiff has no interests antagonistic to the interests of the other Settlement Class Members. (Siprut Aff., ¶ 12.) Moreover, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have significant experience in consumer class actions involving similar issues, scope, and complexity. (*Id.* at ¶ 11; *See* Siprut Firm Resume (attached as Exhibit A to the Siprut Affidavit).) Accordingly, Plaintiff and its counsel would adequately represent the proposed Settlement Class.

### 5. Superiority — Federal Rule of Civil Procedure 23(b)(3).

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the Settlement Class' claims. The burden and expense of individual prosecution of the litigation makes a class action superior to other available methods

of resolution. Thus, absent a class action, it would be difficult, if not impossible, for individual members of the Settlement Class to obtain effective relief.

**B.      The Form and Method of Service of Class Notice Should Be Approved.**

"When the parties reach a settlement agreement before a class determination and seek to stipulate that the settlement will have class wide scope, a class notice must be sent to provide absent class members with certain basic information so that they have an opportunity to consider the terms of the settlement." 2 NEWBERG, section 11.30, p. 11-62-11-63. The substance of the notice must describe, in plain language, the nature of the action, the definition of the certified class, and the class claims and defenses at issue. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must also explain that class members may enter an appearance through counsel if desired, may request to be excluded from the class, and that a class judgment shall have a binding effect on all class members. *Id*. Additionally, dissemination of the notice must comport with both Rule 23 and due process, which require that a class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The proposed notice plan in this case satisfies Rule 23's notice requirements as well as due process considerations, and provides:

1.      A brief summary of the claims alleged in the action;

2.      An explanation of the proposed terms of the Settlement, the amount the Settlement Class Members are entitled to receive under the Settlement Agreement, and the method by which Settlement Class Members can claim their Settlement benefit;

3.      An explanation of the right to opt out of and/or object to the Settlement within given time-frames and subject to certain requirements;

4.      An explanation that members of the Settlement Class who do not opt out will be bound by the proposed settlement and judgment and will have released their claims;

5.      An explanation that members of the Settlement Class who do not opt out will be represented by proposed Class Counsel; and

6.      An identification of Class Counsel and a means for making inquiries thereof.

Federal courts authorize service of class notice by a variety of reliable means. In this regard, "[t]here is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, 'individual notice must be provided to those Class members who are identifiable through reasonable effort.'" *Eisen,* 417 U.S. at 175-76.

In this case, the proposed Settlement provides for direct notice via fax or e-mail and Internet posting. These notice methods are reasonably calculated to reach Settlement Class Members by the best means practicable and should be approved.

**C.      The Court Should Schedule A Hearing For Final Settlement Approval.**

Following notice to the Settlement Class, a Fairness Hearing is to be held on the proposed settlement. MANUAL FOR COMPLEX LITIGATION, § 21.633. Accordingly, Plaintiff, by proposed Class Counsel, respectfully requests that the Court schedule a hearing on final approval of the Settlement to be held no earlier than 150 Days after entry of the Preliminary Approval Order. The hearing on the final settlement approval should be scheduled now so that the date can be disclosed in the class notice.

**VI.      CONCLUSION**

Based upon the foregoing, and because the proposed Settlement is fair, reasonable, and advantageous to the proposed Settlement Class, Plaintiff respectfully requests that the Court enter an Order:

A.      Preliminarily approving the Settlement as being fair, reasonable, and adequate;

B.      Preliminarily approving the Claim Form, Facsimile/Email Notice, and Long Form Website Notice, attached as Exhibits A-C to the Settlement Agreement

C.   Setting the date and time of the Fairness Hearing to be held no earlier than 150 Days after entry of the Preliminary Approval Order;

D.   Provisionally certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

E.   Appointing Plaintiff as Class representative;

F.   Appointing Joseph J. Siprut and Siprut PC as Class Counsel; and

G.   Such other and further relief the Court deems just and proper.


Dated: May 30, 2014                          Respectfully submitted,

                                             NORTH SUBURBAN CHIROPRACTIC
                                             CLINIC, LTD, individually and on behalf of
                                             all others similarly situated


                                             By:  *s/ Joseph J. Siprut*
                                                   One of the Attorneys for Plaintiff
                                                   And the Proposed Settlement Class

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
SIPRUT PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.470.6588
www.siprut.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement** was filed on this 30th day of May, 2014, via the electronic filing system of the United States District Court for the Northern District of Illinois, which will automatically serve all counsel of record.

_____*s/ Joseph J. Siprut*_____

4851-6723-5355, v. 3