# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Prescription Pads TCPA Litigation* | ) <br> ) Case No. 1:13-cv-6897 <br> ) <br> ) District Judge Amy St. Eve <br> ) <br> ) <br> ) |

## PLAINTIFF'S MOTION FOR
## ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*

**S**IPRUT **PC**
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.241.1260
www.siprut.com

*Attorneys for Plaintiff and the Settlement Class*

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. PROCEDURAL HISTORY.....................................................................................2

III. CLASS COUNSEL'S UNOPPOSED FEE REQUEST .............................................3

    A. Rx Security Has Agreed to Pay Class Counsel's Requested Fees, The Amount of Which Was The Result of Compromise ................................................................3

    B. Class Counsel Performed Substantial Work on Behalf of the Class .......................5

    C. The Percentage of the Recovery Method is Preferred in Determining Attorneys' Fee Awards ...............................................................................................................7

        1. The Requested Fees Represent Less Than 20% of the Common Benefit Provided to the Class — a Percentage Below Market and the Range Found Reasonable by the Courts .................................................8

    D. The Requested Fees are Equally Appropriate Under the Lodestar Method ..........10

IV. THE REQUESTED INCENTIVE AWARD TO THE REPRESENTATIVE PLAINTIFF IS PROPER............................................................................................12

V. CONCLUSION.......................................................................................................13

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Fox v. Vice,*
131 S. Ct. 2205 (2011) ...................................................................................................11

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)...................................................................................................3, 10

*Missouri v. Jenkins*,
491 U.S. 274 (1989)..........................................................................................................7

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Connolly v. Nat'l Sch. Bus. Serv., Inc.,*
177 F.3d 593 (7th Cir.1999) ...........................................................................................11

*Cook v. Niedert,*
142 F.3d 1004 (7th Cir. 1998) ...................................................................................11, 12

*Florin v. Nationsbank of Ga., N.A.*,
34 F.3d 650 (7th Cir. 1994) ..............................................................................................7

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ........................................................................................7, 8

*Gastineau v. Wright,*
592 F.3d 747 (7th Cir. 2010) ...........................................................................................11

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ...........................................................................................11

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) .............................................................................................8

*In the Matter of Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ........................................................................................7, 9

*Johnston v. Comerica Mortg. Corp.,*
83 F. 3d 241 (8th Cir. 1996) .............................................................................................9

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) .............................................................................................8

*Montgomery v. Aetna Plywood, Inc.*,
231 F.3d 399 (7th Cir. 2000) ..................................................................................................8

*Redman v. RadioShack Corp.*,
2014 WL 4654477 (7th Cir. Sept. 19, 2014) .......................................................................1, 4

*Skelton v. Gen. Motors Corp.*,
860 F.2d 250 (7th Cir. 1988) ................................................................................................11

*Staton v. Boeing*,
327 F.3d 938 (9th Cir. 2003) ..................................................................................................4

*Sutton v. Bernard*,
504 F.3d 688 (7th Cir. 2007) ..............................................................................................7, 8

**UNITED STATES DISTRICT COURT CASES**

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
2004 WL 287902 (S.D. Ill. Jan. 22, 2004) ..............................................................................8

*In re Bayou Sorrel Class Action*,
2006 WL 3230771 (W.D. La. Oct. 31, 2006) .........................................................................7

*In re Brand Name Prescription Drugs Antitrust Litig.*,
2000 WL 204112 (N.D. Ill. Feb. 9, 2000) .............................................................................12

*In re Cenco, Inc. Sec. Litig.*,
519 F. Supp. 322 (N.D. Ill. 1981) ....................................................................................11, 12

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) .................................................5

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
106 F. Supp. 2d 721 (D.N.J. 2000) .........................................................................................5

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) .............................................................................................12

*In re Southwest Airlines Drink Voucher Litigation*,
No. 1:11-cv-08176 (Docket No. 141) ...................................................................................12

*In re Trans Union Corp.*,
2009 WL 4799954 (N.D. Ill. Dec. 9, 2009) ............................................................................7

*Manners v. Am. Gen. Life Ins. Co.*,
1999 WL 33581944 (M.D. Tenn 1999) ..................................................................................4

*Meyenburg v. Exxon Mobil Corp.*,
2006 WL 2191422 (S.D. Ill. July 31, 2006) ...................................................................................9

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) .................................................................................8

*Rossi v. Proctor & Gamble Co.*,
2013 WL 5523098 (D.N.J. Oct. 3, 2013) .......................................................................................4

*Snell v. Allianz Life Ins. Co. of North Am.*,
2000 WL 1336640 (D. Minn. Sept. 8, 2000) .................................................................................4

*Spicer v. Chi. Bd. Options Exch., Inc.*,
844 F. Supp. 1226 (N.D. Ill. 1993) ..............................................................................................12

*Summers v. UAL Corp. ESOP Comm.*,
2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) .................................................................................9

*Vista Healthplan, Inc. v. Warner Holdings Co. III*,
 246 F.R.D. 349 (D.D.C. 2007) ......................................................................................................9

*Will v. Gen. Dynamics Corp.*,
2010 WL 4818174 (S.D. Ill. Nov. 22, 2010)  .................................................................................8

*Williams v. Gen. Elec. Capital Auto Lease*,
1995 WL 765266 (N.D. Ill. Dec. 26, 1995) ...................................................................................7

**MISCELLANEOUS**

Posner, *Economic Analysis of Law*
§ 21.9 (3d ed. 1986) .......................................................................................................................8

Willging, Hooper & Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*,
69 (Fed. Judicial Center 1996) ......................................................................................................9

Pursuant to Fed. R. Civ. P. 23, Plaintiff North Suburban Chiropractic Clinic, Ltd. ("Plaintiff"), by its counsel, respectfully submits the following Motion for Attorneys' Fees, Costs, and Incentive Award.

## I. INTRODUCTION

Class Counsel seeks the Court's approval of an award for attorneys' fees and costs in the amount of $175,000, and an incentive award of $5,000 to the named Plaintiff – both of which Defendant Rx Security, Inc. ("Rx Security") has agreed to pay. The award sought is reasonable and appropriate, as Class Counsel litigated this matter without any compensation from the investigation stages all the way through class-wide resolution on behalf of the Class, and obtained a settlement that provides substantial relief to the Class members. The Parties were able to reach agreement on the issue of attorneys' fees only after weeks of spirited exchanges on this issue.

Because approximately 84,000 faxes were sent regarding Rx Security's products during the relevant time period, the value of the settlement – i.e., the value of the benefit conferred upon the Class as a result of the settlement – is $945,100.[1] (*See* Declaration of Joseph J. Siprut, attached hereto as Exhibit 1, at ¶6) ("Siprut Decl."). The requested fees – which again, Rx Security does not oppose – constitute approximately 18.3% of the common benefit achieved by the settlement (and well below the presumptive benchmarks utilized in the Seventh Circuit). The result is similarly justified by the lodestar methodology, because given the straight time Class

---

[1] This value is calculated by subtracting the estimated administration costs not associated with Notice from the Settlement Fund. *See Redman v. RadioShack Corp.*, 2014 WL 4654477, at *5 (7th Cir. Sept. 19, 2014) ("[I]n this case the administrative costs taken into account by the magistrate judge in determining the 'fairness' of the attorneys' fee award were not limited to costs of notice to the class."). Here, subtracting the costs associated with Notice ($39,100) from the total estimated costs of Settlement Administration ($85,000) leaves a remainder of $45,900. If this value is subtracted from the value of the Settlement Fund, which by definition includes costs not associated with Notice, the remainder is $954,100 – the estimated value of relief made available for the Settlement Class.

Counsel has invested to prosecute this case, the requested fee award utilizes a multiplier of approximately 1.04 – again, well within presumptive Seventh Circuit norms.

In sum, and as demonstrated below, Counsel's requested fee award:

- Is the result of negotiation and compromise with Rx Security and is unopposed;

- Falls well within the range of attorneys' fees and expenses awarded by courts within the Seventh Circuit using the percentage of the benefit and lodestar/multiplier methodologies.

## II. PROCEDURAL HISTORY

On September 25, 2013, Plaintiff filed a class action complaint ("Complaint") against Rx Security in the United States District Court for the Northern District of Illinois. On behalf of itself and a proposed class of all individuals or entities in the United States who were sent facsimile advertisements from or on behalf of Rx Security or who own the fax machines to which the facsimiles were sent, Plaintiff alleged that Rx Security sent (or had sent on its behalf) facsimile advertisements to unwilling recipients in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

After Rx Security received service of process in accordance with the Hague Convention,[2] it contacted Plaintiff to request an extension to answer or otherwise plead. Plaintiff agreed. Between November 2013 and January 2014, Plaintiff agreed to several more extensions for Rx Security to respond to the Complaint. During this time, the Parties considered various settlement options. At first, Rx Security's lack of any meaningful assets indicated that class-wide relief was simply not available. Undeterred, the Parties spent the next several months discussing whether additional funds were available from an insurance policy, so as to provide class-wide relief.

---

[2] Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, [1969] 20 U.S.T. 261, T.I.A.S. No. 6638.

Based on these discussions and the Parties' efforts, Rx Security was able to access additional funds to provide meaningful relief to the proposed Settlement Class – funds that would otherwise not be available.

Rx Security filed its Answer and Affirmative Defenses on March 4, 2014. Plaintiff reviewed Rx Security's Affirmative Defenses and determined that cause existed for a motion to strike. By April 2014, however, the Parties reached an agreement in principle as to the settlement for class-wide relief. Accordingly, Plaintiff did not pursue its motion. The Parties finalized an agreement on May 28, 2014. Thus, after nearly six months of settlement discussions, the Parties finally agreed upon all key terms of the proposed settlement.

On May 30, 2014, Plaintiff filed its Motion for Preliminary Approval of Class Action Settlement. (Docket No. 22.) The Court granted Plaintiff's motion on July 16, 2014 and entered a Settlement Administration Order August 25, 2014. (Docket Nos. 27, 34, 38.)[3]

## III. CLASS COUNSEL'S UNOPPOSED FEE REQUEST

### A. Rx Security Has Agreed to Pay Class Counsel's Requested Fees, The Amount of Which Was The Result of Compromise.

Class Counsel's fee request was the result of a negotiated resolution with Rx Security. The Parties' negotiations over this issue were spirited, but both sides worked hard to reach a result that was fair, managed risk for both sides, and would eliminate any burdens otherwise imposed on this Court by having to decide fees on a contested basis. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee.").

---

[3] Because a signed order was not issued concurrently with the Minute Entry granting Plaintiff's Motion for Preliminary Approval (Docket No. 27), the Parties moved for a signed order. (Docket No. 30.) In addition, the Parties moved to revise the Settlement Administration Order (Docket No. 34), after administrative issues arose with effecting notice to Class members (Docket No. 35.) The result was a Modified Settlement Administration Order. (Docket No. 38.)

Moreover, the significance of the recovery for the Settlement Class is further emphasized by Rx Security's limited financial resources. Simply put, Rx Security was not financially capable of funding *any* form of class-wide relief. Class Counsel, however, made significant efforts to find other financial resources that would provide class-wide relief. The Parties exchanged information and held numerous discussions which led to the availability of funds contributed under an insurance policy held by Rx Security. Given that the Settlement is thus a virtual windfall, Class Counsel believes that the Settlement is beneficial to the Settlement Class and meets the class-certification requirements of Rule 23.

Given all this, the Parties' negotiated resolution must be accorded deference, even if it is not necessarily the exact number a court would have derived in a vacuum. *See Redman v. RadioShack Corp.*, 2014 WL 4654477, at *4 (7th Cir. Sept. 19, 2014) (stating that a judge may assume a passive role where there is genuine adverseness between the parties); *Staton v. Boeing*, 327 F.3d 938, 964 (9th Cir. 2003) (where "defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class . . . the court need not inquire into the reasonableness of the fees even at the high end with precisely the same level of scrutiny as when the fee amount is litigated"; the issue is whether the fee is facially fair and reasonable); *Rossi v. Proctor & Gamble Co.*, 2013 WL 5523098, at *9 (D.N.J. Oct. 3, 2013) ("[C]ourts routinely approve agreed-upon attorneys' fees awards paid by the defendant, rather than the class members, especially where that amount is independent of the benefit obtained for the class."); *Snell v. Allianz Life Ins. Co. of North Am.*, 2000 WL 1336640, at *19 (D. Minn. Sept. 8, 2000) ("Our acceptance of the fee request is facilitated by the fact that the fee amount was independently negotiated by the settling parties, and comes from a source that does not impact upon the total settlement fund that is available to the class."); *Manners v. Am. Gen. Life*

*Ins. Co.*, 1999 WL 33581944, at *28 (M.D. Tenn. Aug. 11, 1999) (negotiated fee in class action entitled to "great weight" where attorneys' fees negotiations were conducted at arm's length, after agreement on all settlement terms); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *4 (C.D. Cal. June 10, 1992) (where there is arm's length negotiation with neutral mediator and no evidence of self-dealing or conflict of interest, "the Court is reluctant to interpose its judgment as to the amount of attorneys' fees in the place of the amount negotiated by the adversarial parties in the litigation.").

Indeed, as another district court observed in *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 106 F. Supp. 2d 721, 722 n.1 (D.N.J. 2000):

> Here, Class Counsel presumably sought more than [the agreed upon fee] in their fee negotiations with Prudential, and presumably agreed to [the fee] as a compromise, in order to achieve an agreement that Class Counsel hoped, under the circumstances, would be respected. If such agreements are likely to be subject to further reduction by the Court notwithstanding the absence of any collusion or opportunity for collusion, and notwithstanding the absence of any impact on the class recovery, then future plaintiffs' counsel will have little incentive to make such agreements.

Here, as in *In re Prudential*, while any fee award on a contested basis may have been higher (or lower) than the agreed amount, Class Counsel respectfully submits that the agreed amount is a fair compromise. More importantly, as detailed below, the request is further supported under the applicable standards for approval.

**B. Class Counsel Performed Substantial Work on Behalf of the Class.**

Class Counsel expended tremendous effort in bringing about this settlement on behalf of Class members. Rx Security's attorneys mounted a skilled defense, from the pleadings stage through settlement. The hours Class Counsel expended in battling Rx Security, which total 395.5 (Siprut Decl., ¶21), include the following:

- **Pre-Complaint Factual Investigation**. Class Counsel began conducting a factual and legal investigation in 2013, starting with an analysis of the facsimile advertisement issued on Rx Security's behalf.

- **Legal Investigation**. With the initial factual investigation ongoing, Class Counsel investigated the litigation landscape. In addition, Class Counsel researched: (1) choice of law issues; (2) the appropriate venue and potentially applicable statutes, regulations, and common law claims under Illinois and various other states' laws; and (3) the elements and potential defenses for each of the proposed claims. Once the initial factual and legal research had been completed, Class Counsel began: (1) formulating the TCPA claim; (2) drafting, preparing, and filing the Complaint; (3) researching the requirements for effecting service under the Hague Convention; and (4) engaging in correspondence with clients regarding the complaint and the case in general.

- **Motion Practice**. Early on in the case, Rx Security contended that the class size is not ascertainable. Rx Security provided information on the method by which faxes were sent and how those records were kept. In addition, Rx Security contended that many, if not all, of the recipients had established business relationships or had otherwise provided express permission for Rx Security to send the faxes. Thus, in Rx Security's view, individualized issues predominated over common Class issues. Rx Security raised these arguments both informally through correspondence and as affirmative defenses. Plaintiff prepared a motion to strike Rx Security's affirmative defenses challenging both the merits of these defenses and the level of factual plausibility. Class Counsel also significantly researched class certification issues (and potential Rx Security defenses to class certification), given that class certification would have been the "make or break" point for a case of this nature. For example, Class Counsel researched the theory under which a class could be certified, even if Rx Security had obtained prior express permission or had an existing business relationship with some or all of the Settlement Class members.

- **Interactions With Clients and the Members of the Class**. During the course of the past nine (9) months, Class Counsel has received various inquiries from Settlement Class Members, which has required Class Counsel to take the time to communicate with each individual, collect data, and keep consumers apprised of any progress in the case.

- **Settlement**. Class Counsel conducted substantial and protracted settlement negotiations with Rx Security that spanned approximately six months. Class Counsel researched and drafted memoranda regarding potential settlement structures, analyzed settlements in similar cases, reviewed materials obtained through informal discovery, and regularly engaged in telephonic conferences and email exchanges. Moreover, Class Counsel made significant efforts to find other financial resources that would provide class-wide relief, given Rx Security's inability to fund a class-wide settlement. After approximately six

months of negotiations, the parties were able to agree on the substantive terms that would provide immediate and direct benefits to the Class.

### C. The Percentage of the Recovery Method is Preferred in Determining Attorneys' Fee Awards.

The Seventh Circuit has strongly endorsed the percentage of the recovery benefit method as the best means for calculating class counsels' attorneys' fees. *See In the Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992); *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 650, 566 (7th Cir. 1994); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998). "Given the issues likely to arise in computing a lodestar, courts across the country, both federal and state, are retreating from a lodestar analysis in favor of setting common benefit fees at a percentage of the benefit secured . . . ." *In re Bayou Sorrel Class Action*, 2006 WL 3230771, at *3 (W.D. La. Oct. 31, 2006) (collecting cases).

Although awarding attorneys' fees based on a percentage of the recovery or Class Counsel's lodestar remains within the discretion of the district court, *In re Trans Union Corp.*, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009) (citing *Florin*, 34 F.3d at 566), "[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class" especially where the percentage accurately reflects the market. *Williams v. Gen. Elec. Capital Auto Lease*, 1995 WL 765266, at *9 (N.D. Ill. Dec. 26, 1995); *see also Sutton v. Bernard*, 504 F.3d 688, 693 (7th Cir. 2007) (directing district court on remand to consult the market for legal services so as to arrive at a reasonable percentage) (citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) (stating that in determining attorneys' fees, "we have consistently looked to the marketplace as our guide to what is 'reasonable'")).

As demonstrated directly below, under the Percentage of Recovery method, the fee request here is entirely supported under presumptive benchmarks used in the Seventh Circuit.

1. **The Requested Fees Represent Approximately 18.3% of the Common Benefit Provided to the Class – a Percentage Below Market and the Range Found Reasonable by the Courts.**

In deciding the appropriate fee under the percentage-of-recovery method, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton*, 504 F.3d at 692 (*quoting In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)); *see also Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) ("[The measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case.").

The fee agreements between Class Counsel and Plaintiff are contingent in nature. (Siprut Decl., ¶2.) Courts have found that in commercial, non-class litigation, attorneys regularly negotiate contingent fee arrangements, for a fee of between 33.3% and 40% of the recovery. *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (citing *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986); *see also* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986) (explaining established practice to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases).

The same is equally true in the class action context, including in the Seventh Circuit. *See Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 2004 WL 287902, at *2 (S.D. Ill. Jan. 22, 2004) (finding that 29% of the gross settlement is a reasonable fee award); *Gaskill*, 160 F.3d at 362-3 (noting that typical contingency fees are between 33% and 40% and that "[s]ome courts have suggested 25% as a benchmark figure for a contingent-fee award in a class action"); *Will v. Gen. Dynamics Corp.*, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010) (stating that, where the

market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market" is "33.33% of the common fund recovered"); *Summers v. UAL Corp. ESOP Comm.*, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (finding that attorneys' fees amounting to 16% of the gross settlement "is clearly within the range of what has been deemed reasonable by the Seventh Circuit") (citing *In re Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d at 572); *Meyenburg v. Exxon Mobil Corp.*, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."). A Federal Judicial Center Study further supports the norm in attorney fee awards, finding that, in federal class actions, median attorney fee awards were in the range of 27% to 30%. Willging, Hooper & Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules*, at 69 (Fed. Judicial Center 1996).

Here, Plaintiff is requesting – and Rx Security has agreed to pay – $175,000 in attorneys' fees. As explained above, the potential value of the settlement is $954,100. Thus, the requested attorneys' fees amount is approximately 18.3% of the total potential benefit obtained for the class.[4]

---

[4] This number was calculated based on the total approximate value of the settlement, including Notice Costs, the Fee Award, and the Incentive Award to the Class Representative. The inclusion of these fees and costs is proper in calculating the total monetary value of the settlement. *RadioShack Corp.*, 2014 WL 4654477, at *5 (stating that the value of relief for the Class is "the fee plus what the class members received."); *Johnston v. Comerica Mortg. Corp.,* 83 F. 3d 241, 246 (8th Cir. 1996) ("The award to the class and the agreement on attorney fees [and costs] represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); *Vista Healthplan, Inc. v. Warner Holdings Co. III,* 246 F.R.D. 349, 363 (D.D.C. 2007) ("because the attorneys' fees are borne by defendants and not plaintiffs, they represent a valuable part of the settlement").

**D. The Requested Fees Are Equally Appropriate Under the Lodestar Method.**

Although the percentage of the common benefit methodology alone supports the fee request here, a lodestar cross-check further supports the request, and further underscores the reasonableness of the Parties' compromise on this issue.

To determine the reasonableness of attorneys' fees under the lodestar method, the first step is to calculate a base lodestar amount by "multiplying a reasonable hourly rate by the number of hours reasonably expended." *Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010) (citing *Hensley*, 461 U.S. at 433-37 (1983)). Here, the time summary included in the Siprut Declaration accurately reflects the extensive work Class Counsel performed – and expects to perform to see the case through to completion – in this novel and complex litigation. To date, three attorneys at Class Counsel's firm have spent 395.5 hours collectively in prosecuting this action for a total lodestar amount of $167,494 (Siprut Decl., ¶21.) As detailed in the Declaration of Joseph Siprut, the hourly rates utilized by Siprut PC's attorneys and legal staff (1) have been previously approved by courts throughout the country and this district; (2) are the same hourly rates charged by Siprut PC to outside clients; and (3) are demonstrably *lower* than the median hourly rate in the legal market based on the hourly rates charged in other cases by attorneys with similar experience, skill and reputation. (*Id*., ¶¶23-29.)

The time summary provided in the Siprut Declaration is sufficient to form the basis of the fee request. The Supreme Court has explicitly held that:

> trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation.

*Fox v. Vice,* 131 S. Ct. 2205, 2216 (2011) (internal quotations omitted). Class Counsel's declaration and the time records summarized therein are thus more than sufficient for establishing lodestar figures.

The base lodestar is typically adjusted using a multiplier to take into account various factors in the litigation that affect the reasonableness of the requested fees. *See, e.g., Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir. 1998); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988). These factors include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau*, 592 F.3d at 748. When applying a multiplier to the base lodestar amount, courts should also consider the risk plaintiff's counsel assumes in recovering nothing. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975-76 (7th Cir. 1991) (remanding case for recalculation of attorneys' fees because the trial court failed to award a risk multiplier). Multipliers can range from 2 to 4 or even higher. *See In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (applying a lodestar multiplier of 4 to lead counsel's lodestar and 2 to other counsels' lodestar). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Id.* (citing *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir.1999)).

In this case, as detailed above, Class Counsel's base lodestar is $167,494. Rx Security has already agreed to pay $175,000 in fees. Thus, in order for this Court to determine that the award of $175,000 in fees is appropriate under the lodestar methodology alone, the Court would need to utilize a multiplier of just above 1.04.[5] This multiplier is certainly within the range of reasonableness considering the risk of non-recovery and the excellent result achieved. *See Harman*, 945 F.2d at 975 (noting "[a risk] multiplier is, within the court's discretion, appropriate

---

[5] That figure was calculated by using the total agreed amount of $175,000. Multiplying $167,494 by 1.045 equals $174,193.76 – just under the agreed amount of fees.

-11-

when counsel assume a risk of non-payment in taking a suit" and "[m]ultipliers anywhere between one and four . . . have been approved"); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. at 327 (applying a lodestar multiplier of 4 to lead counsel's lodestar and 2 to other counsels' lodestar); *In re Brand Name Prescription Drugs Antitrust Litig.*, 2000 WL 204112, (N.D. Ill. Feb. 9, 2000) (awarding $91 million above lodestar and noting that "[an] award of more than two times the lodestar calculation is believed to be fair and just in these circumstances").

Accordingly, the requested fee award of $175,000 is reasonable under a lodestar analysis or lodestar cross-check and may be approved by the Court on this alternative basis.

## IV. THE REQUESTED INCENTIVE AWARD TO THE REPRESENTATIVE PLAINTIFF IS PROPER.

Finally, Plaintiff requests that the named plaintiff and class representative receive an incentive award of $5,000, which Rx Security does not oppose (and which, like attorneys' fees, was the result of a negotiated compromise). The rationale for awarding incentive payments to named plaintiffs is that they should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005). Incentive awards are appropriate "to encourage or induce an individual to participate" in a class action law suit. *Id.*

Moreover, and similar to the fee request, comparisons to incentive awards in other similar class action settlements further underscore that this amount is reasonable and fair. *See, e.g.*, *In re Southwest Airlines Drink Voucher Litigation*, No. 1:11-cv-08176 (Docket No. 141) (each of two class representatives received $15,000 incentive awards); *Cook*, 142 F.3d at 1016 (awarding $25,000 incentive award); *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) ($30,000 awarded from settlement fund of $10 million).

In this case, the class representative plaintiff has contributed substantially to this

litigation and has invested considerable time, at its own expense, to do so. Plaintiff aided our initial investigation of the claims, and worked to provide a variety of documentation (initially at our request, and then additionally as the Parties exchanged information) to support the asserted claims on behalf of the Class. Plaintiff also spent several hours with us on the phone discussing the case and its progress, and particularly the scope of the settlement eventually achieved. (Siprut Decl., ¶3.)

## V. CONCLUSION

For the reasons set forth above, Class Counsel respectfully suggests that the proposed (and agreed-upon) award of attorneys' fees and costs in the amount of $175,000 – and the class representative award of $5,000 – is fair, appropriate, and reasonable, and requests the Court enter an Order approving these amounts.

Dated: November 13, 2014

Respectfully submitted,

NORTH SUBURBAN CHIROPRACTIC CLINIC, LTD., individually and on behalf of all others similarly situated

By: *s/ Joseph J. Siprut*
    Attorneys for Plaintiff
    And the Settlement Class

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
SIPRUT PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.241.1260

# CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion for Attorneys' Fees, Costs and Incentive Award** was filed this 13th day of November, 2014, via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.

*/s/ Joseph J. Siprut*
Joseph J. Siprut

4830-1896-0928, v. 2