**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*In re Prescription Pads TCPA Litigation*   )
                      )   Case No. 13-cv-6897
                      )
                      )   Hon. Judge Amy St. Eve
                      )
                      )
                      )

**PLAINTIFF'S MOTION FOR**
**<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

<u>Submitted by:</u>

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 N. State Street
Suite 1600
Chicago, Illinois  60602
312.236.0000
Fax: 312.241.1260
<u>www.siprut.com</u>

*Attorneys for Plaintiff and the*
*Settlement Class*

## TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................1

II.    PROCEDURAL HISTORY .........................................................................2

III.   COMPONENTS OF THE SETTLEMENT ................................................4

       A. Benefits to Settlement Class Members .................................................4

       B. Incentive Award to Class Representative ..............................................4

       C. Attorneys' Fees and Costs ....................................................................4

IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL
       THE REQUIREMENTS OF RULE 23 ........................................................5

       A. Certification of the Proposed Settlement Class .....................................5

              1.  Numerosity – Federal Rule of Civil Procedure 23(a)....................6
              2.  Commonality/Predominance – Federal Rule of Civil Procedure 23(a)(2)
                  and 23(b)(3)...........................................................6
              3.  Typicality – Federal Rule of Civil Procedure 23(a)(3) .................8
              4.  Adequacy of Representation–Federal Rule of Civil Procedure 23(a)(4) .........9
              5.  Superiority – Federal Rule of Civil Procedure 23(b)(3)...................9

V.     THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE FINAL
       APPROVAL .................................................................................................10

       A. Strength of the Case Measured Against the Settlement ......................12

       B. The Complexity, Length, and Expense of Continued Litigation ..........17

       C. The Amount of Opposition to the Settlement.......................................17

       D. The Lack of Collusion In Reaching a Settlement ................................18

       E. The Stage of the Proceedings and the Amount of Discovery Completed..............19

VI.    THE COURT-APPROVED NOTICE PROGRAM SATIFIES DUE PROCESS............20

VII.   CONCLUSION............................................................................................21

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)...................................................................................5

*Carson v. American Brands, Inc.,*
450 U.S. 79 (1981) .................................................................................11

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011)...............................................................................7

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) ...............................................................10, 18

*Butler v. Sears, Roebuck & Co.,*
2012 WL 5476831 (7th Cir. Nov. 13, 2012) .................................................8

*CE Design Ltd. v. King Architectural Metals, Inc.,*
637 F.3d 721 (7th Cir. 2011) ..................................................................14

*Eubank v. Pella Corp.,*
753 F.3d 718 (7th Cir. 2014) ..................................................................18

*Cotton v. Hinton,*
559 F.2d 1326 (5th Cir. 1977) ................................................................12

*Crawford v. Equifax Payment Servs., Inc.,*
201 F.3d 877 (7th Cir. 2000) ..................................................................16

*E.E.O.C. v. Hiram Walker & Sons, Inc.,*
768 F.2d 884 (7th Cir. 1985) .............................................................12, 16

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.,*
128 F.3d 1074 (7th Cir. 1997) ...............................................................11

*Gene & Gene L.L.C. v. BioPay, L.L.C.,*
541 F.3d 318 (5th Cir. 2008) ..................................................................14

*In re Corrugated Container Antitrust Litig.,*
643 F.2d 195 (5th Cir. 2010) ..................................................................19

*In re Dry Max Pampers Litig.,*
724 F.3d 713 (6th Cir. 2013) ..................................................................16

*Ira Holtzman, C.P.A. v. Turza,*
728 F.3d 682 (7th Cir. 2013) ...................................................6, 14

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) ...........................................10, 11, 12, 16

*Mars Steel v. Continental Ill. Nat'l Bank & Trust,*
834 F.2d 677 (7th Cir. 1987) ...................................................18

*Murray v. GMAC Mortg. Corp.,*
434 F.3d 948 (7th Cir. 2006) ...................................................16

*Patterson v. Gen. Motors Corp.,*
631 F.2d 476 (7th Cir. 1980) ...................................................7

*Rosario v. Livaditis,*
963 F.2d 1013 (7th Cir. 1992) ...................................................7

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
463 F. 3d 646 (7th Cir. 2006) ...................................................12

**UNITED STATES DISTRICT COURT CASES**

*Am. Civil Liberties Union Resolution Corp.,*
128 F.3d 1074 (7th Cir. 1997) ...................................................10

*Cannon v. Texas Gulf Sulphur Co.,*
55 F.R.D. 308 (S.D.N.Y. 1969) ...................................................12

*Craftwood Lumber Co. v. Interline Brands, Inc.,*
2013 WL 4598490 (N.D. Ill. Aug. 29, 2013) ...................................................13

*Fletcher v. ZLB Behring LLC,*
245 F.R.D. 328 (N.D. Ill. 2006) ...................................................7

*G.M. Sign, Inc. v. Brink's Mfg. Co.,*
2011 WL 248511 (N.D. Ill. Jan. 25, 2011) ...................................................14

*Gomez v. Ill. State Bd. of Educ.,*
117 F.R.D. 394 (N.D. Ill. 1987) ...................................................9

*Hall v. Bank of Am., N.A.,*
2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) ...................................................18

*Hinman v. M and M Rental Ctr., Inc.,*
545 F. Supp. 2d 802 (N.D. Ill. 2008) ...................................................9

*Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*,
988 F. Supp. 1130 (N.D. Ill. 1997) .........................................................................10

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ......................................................................17

*In re Cendant Corp. Secs. Litig.*,
109 F. Supp. 2d 235 (D.N.J. 2000) .........................................................................12

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ....................................................................17

*In re Neopharm, Inc. Securities Litig.*,
225 F.R.D. 563 (N.D. Ill. 2004).................................................................................8

*In re RJR Nabisco, Inc. Secs. Litig.*,
1992 WL 210138 (S.D.N.Y. Aug. 24, 1992)...........................................................12

*In re Sw. Airlines Voucher Litig.*,
2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ..........................................................16

*Kenro, Inc. v. Fax Daily, Inc.*,
962 F. Supp. 1162 (S.D. Ind. 1997).........................................................................14

*Maxwell v. Arrow Fin. Servs., LLC*,
2004 WL 719278 (N.D. Ill. March 31, 2004) ...........................................................6

*Pope v. Harvard Banchares, Inc.*,
240 F.R.D. 383 (N.D. Ill. 2006).................................................................................6

*Radmanovich v. Combined Ins. Co. of Am.*,
216 F.R.D. 424 (N.D. Ill. 2003).................................................................................8

*Scholes v. Stone, McGuire, & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992).................................................................................7

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) ......................................................................19

*Smith v. Nike Retail Servs., Inc.*,
234 F.R.D. 648 (N.D. Ill. 2006).................................................................................6

*Whitten v. ARS Nat'l Servs. Inc.*,
2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) ...........................................................7

**STATUTES AND FEDERAL RULES**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

**MISCELLANEOUS**

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS
(4th ed. 2002) .......................................................................................................................6

*Manual for Complex Litigation*
(4th ed. 2004) .....................................................................................................................19

Pursuant to Fed. R. Civ. P. 23, Plaintiff North Suburban Chiropractic Clinic, Ltd. ("Plaintiff"), by its counsel, respectfully submits the following as its Motion for Final Approval of Proposed Class Settlement. For the reasons detailed below, Plaintiff respectfully requests that the Court enter an Order granting final approval of the Settlement as fair, reasonable, and adequate.[1]

## I.    INTRODUCTION

This case is based on the allegation that Defendant Rx Security, Inc. ("Rx Security") sent unsolicited advertisements *en masse* to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

Class Counsel has secured a strong and hard-fought settlement with Rx Security that provides Class Members with the opportunity to receive up to $20.00 – cash – to be paid from the Settlement Fund. The Settlement reached in this case – preliminarily approved by this Court on July 16, 2014 – should now be granted Final Approval.

As Plaintiff pointed out in its preliminary approval motion (Docket No. 39), Rx Security's lack of meaningful financial resources leaves no doubt that this Settlement Agreement is in the best interest of the Settlement Class. Throughout months of negotiations, Rx Security provided financial records to Plaintiff establishing that Rx Security could not – by itself – possibly afford a meaningful class settlement. Nevertheless, Class Counsel's efforts resulted in the eventual contribution of funds from an insurance policy held by Rx Security. Without that contribution, it is certain that class-wide relief would not be available. Put simply, the fact that there is *any* relief for the putative Settlement Class is a virtual windfall for the Class.

---

[1] All defined terms in this brief are intended to have the definitions assigned to them in the Settlement Agreement.

After extensive notice was given to Class Members in accordance with the Settlement Agreement (attached as Exhibit 1 hereto) and the Preliminary Approval Order, only six Class Members sought to be excluded, and ***not one Class Member objected to the settlement***. (*See* the Declaration of Michael E. Hamer (the "Hamer Decl."), attached hereto as Exhibit 3, ¶¶15, 16.) Since the Class has thus overwhelmingly approved the Settlement after being provided notice, and since the Settlement is demonstrably an outstanding result that meets or exceeds the requisite standards – especially given Rx Security's limited financial means – this Settlement should now receive Final Approval.

## II.    PROCEDURAL HISTORY

On September 25, 2013, Plaintiff filed a class action complaint ("Complaint") against Rx Security in the United States District Court for the Northern District of Illinois. On behalf of itself and a proposed class of all individuals or entities in the United States who were sent facsimile advertisements from or on behalf of Rx Security or who own the fax machines to which the facsimiles were sent, Plaintiff alleged that Rx Security sent (or had sent on its behalf) facsimile advertisements to unwilling recipients in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). (*See generally* Docket No. 1.)

After Rx Security received service of process in accordance with the Hague Convention,[2] it contacted Plaintiff to request an extension to answer or otherwise plead. (*See* Declaration of Joseph J. Siprut ("Siprut Decl."), attached hereto as Exhibit 2, ¶5.) Plaintiff agreed. (*Id.*)

Between November 2013 and January 2014, Plaintiff agreed to several more extensions for Rx Security to respond to the Complaint. (Docket Nos. 9, 11, 13, 16.) During this time, the Parties considered various settlement options. (*See* Siprut Decl. ¶6.) At first, Rx Security's lack

---

[2] Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, [1969] 20 U.S.T. 261, T.I.A.S. No. 6638.

of any meaningful assets indicated that class-wide relief was simply not available. (*Id.*) Undeterred, Plaintiff spent the next several months engaging Rx Security on whether additional funds were available from an insurance policy, so as to provide class-wide relief. (*Id.*) In the end, additional funds were made available to provide meaningful relief to the proposed Settlement Class – funds that would otherwise not be available. (*Id.*)

The Parties subsequently continued negotiations, and after reaching an agreement in principle, spent several more weeks drafting and editing a written agreement. Finally, on May 28, 2014, after nearly six months of settlement discussions, the Parties finally agreed upon all terms. (Ex. 1.) (*See* Siprut Decl. ¶7.)

On May 30, 2014, Plaintiff filed its Motion for Preliminary Approval of Class Action Settlement. (Docket No. 22.) The Court granted Plaintiff's motion on July 16, 2014, and entered a Settlement Administration Order on August 25, setting deadlines for Plaintiff motion in support of final approval and award of attorneys' fees. (Docket Nos. 27, 34, 38.)[3]

On November 13, 2014, Plaintiff filed its Motion for Attorneys' Fees, Costs and Incentive Award. (Docket No. 39.) That motion is currently pending before this Court.

## III. COMPONENTS OF THE SETTLEMENT

### A. Benefits to Settlement Class Members

The Settlement establishes the following relief for the Settlement Class Members:

- **Payments Available to All Class Members.** Class Members shall have until the Claims Deadline to submit an Approved Claim. Rx Security agrees to pay or cause to be paid from the Settlement Fund a sum of up to twenty dollars ($20.00) per Approved Claim. There can be only one Approved Claim per person, business, and/or

---

[3] Because a signed order was not issued concurrently with the Minute Entry granting Plaintiff's Motion for Preliminary Approval (Docket No. 27), the Parties moved for a signed order. (Docket No. 30.) In addition, the Parties moved to revise the Settlement Administration Order (Docket No. 34), after administrative issues arose with effecting notice to Class members (Docket No. 35.) The result was a Modified Settlement Administration Order. (Docket No. 38.)

facsimile line regardless of the number of Class Members who use that facsimile line, and regardless of number of times Rx Security may have sent a facsimile to that facsimile number. Thus, the maximum benefit per fax number is $20.00.

- **Pro Rata Reduction:** If the Settlement Administrator receives up to 1,000 Approved Claims, then each associated Class Member will receive $20.00. If the Settlement Administrator receives more than 1,000 claims, then each associated Class Member will receive a pro rata share of the sum equal to ($20,000 + $10.00 for each Approved Claim beyond 1,000), up to a maximum aggregate sum of $750,000. For example, if 1,100 Approved Claims are received, each associated Class Member will receive $19.09. If 2,000 claims are received, then each associated Class Member will receive $15.00. If 74,000 approved claims are received, then each associated Class Member will receive $10.14. Accordingly, Rx Security's maximum liability under this Agreement after payment of (i) the total amount of Approved Claims, (ii) Settlement Notice and Administrative Expenses, (iii) the Fee Award, and (iv) incentive award to the Class Representative amounts, shall not exceed one million dollars ($1,000,000).

- **Prospective Relief:** As part of this settlement, Rx Security agrees not to conduct any future marketing activities by means of unsolicited facsimile transmission in the United States or its Territories.

### B. Incentive Award to Class Representative

Subject to Court approval, the class representative will request a service award of $5,000 in recognition of Plaintiff's contributions to the Class, the time it spent assisting with the prosecution of this case, and the risk it incurred in commencing the action, both financial and otherwise.

### C. Attorneys' Fees and Costs

Subject to Court approval, Rx Security has agreed not to oppose Plaintiff's request for fees and costs in the amount of $175,000. These benefits are paid directly by Rx Security and do not reduce or dilute the Class benefits in any way. Plaintiff's Motion for Approval of Attorneys' Fees Costs, Expenses, and Incentive Award substantiates Plaintiff's Counsel's fee request in detail. (Docket No. 39.)

-4-

## IV.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23

### A.  Certification of the Proposed Settlement Class

To certify a class under Rule 23, the Court must find that the proposed class meets the elements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2) or (3). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). "Settlement is relevant to class certification" and is "a factor in the calculus." *Id.* at 619, 622. Indeed, the Supreme Court "has expressly approved the use of the class settlement device." *Id.* at 618. Plaintiff seeks conditional certification of the Settlement Class under Rule 23(b)(3), its appointment as class representative solely for the purposes of the Settlement, and appointment of its counsel as Class Counsel solely for the purposes of the Settlement.

The Plaintiff requests that the Court, for the purposes of settlement, certify a Settlement Class defined as:

> All individuals or entities in the United States or its Territories who were sent one or more facsimile advertisements from or on behalf of Defendant Rx Security, Inc. or who own the fax machines on which the facsimiles were received.
>
> The Settlement Class does not include: (1) Rx Security and its subsidiaries and affiliates, employees, officers, directors, agents, and representatives and their family members; (2) Class Counsel; and (3) the judges who have presided over the Litigation.

As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.

### 1.   Numerosity — Federal Rule of Civil Procedure 23(a).

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no specific number required, nor is a plaintiff required to state the exact number of

potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). *See also* Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2001). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, 2004 WL 719278, at *2 (N.D. Ill. March 31, 2004). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Pope v. Harvard Banchares, Inc*., 240 F.R.D. 383, 387 (N.D. Ill. 2006).

In this case, approximately 57,767 individuals or entities were sent regarding Rx Security's products.[4]  (*See* Siprut Decl. ¶10.) Accordingly, the Class satisfies the numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands. . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

## 2. Commonality/Predominance — Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), *reh'g denied* (Sept. 24, 2013), *cert. denied,* 134 S. Ct. 1318, 188 L. Ed. 2d 306 (U.S. 2014). Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not themselves "defeat the certification of a class." *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980),

---

[4] In Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Docket No. 22), Plaintiff inadvertently cited to the number of faxes transmitted in support of numerosity. To clarify, the class size is 57,767.

*cert. denied*, 451 U.S. 914 (1980); *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993). In fact, the threshold for commonality is not high. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Rather, commonality exists if a common nucleus of operative fact exists, even if as to one question of law or fact. *Whitten v. ARS Nat'l Servs. Inc.*, 2001 WL 1143238, at *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "defendants have engaged in standardized conduct toward the members of the proposed class."); *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (stating that "commonality requires that the claims of the class simply "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

As alleged in Plaintiff's Complaint, all Settlement Class members share common questions of fact and law that predominate over issues affecting only individual Settlement Class members. Those common factual and legal issues for the Class include (1) whether Rx Security engaged in a pattern of sending fax advertisements; (2) the manner in which Rx Security compiled or obtained its list of fax numbers; and (3) whether Rx Security violated the TCPA.

Additionally, Rule 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). "Predominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 2012 WL 5476831, at *2 (7th Cir. Nov. 13, 2012). "A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not a cost

to any one of them large enough to justify the expense of an individual suit." *Id.* In this case, common questions predominate for the Class because, as alleged by Plaintiff, Rx Security's conduct is *identical* with regard to all members of the proposed Settlement Class. Thus, the predominance requirement is satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence of Rx Security's conduct.

### 3. Typicality — Federal Rule of Civil Procedure 23(a)(3).

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if the plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is liberally construed." *In re Neopharm, Inc. Securities Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

Here, Plaintiff and the Settlement Class all received fax advertisements, and alleged that Rx Security sent or had sent on its behalf the faxes in violation of the TCPA, thereby entitling Plaintiff and the Settlement Class to actual or statutory damages. Moreover, there are no defenses that pertain to Plaintiff that would not also pertain to the Settlement Class. Accordingly, Plaintiff's claims are typical of the other Settlement Class members' claims.

### 4. Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy

requirement, class representatives must establish that: (i) their claims are not in conflict with those of the proposed class, (ii) they have sufficient interests in the outcome of the case, and (iii) they are represented by experienced, competent counsel. *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Here, Plaintiff's interests are consonant with the interests of the other Settlement Class members – obtaining relief from Rx Security for its marketing of its services by facsimile transmissions. Plaintiff has no interests antagonistic to the interests of the other Settlement Class members. (*See* Siprut Decl. ¶12.) Moreover, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have significant experience in consumer class actions involving similar issues, scope, and complexity. (*Id.* ¶13.) Accordingly, both Plaintiff and its counsel have adequately represented the Settlement Class.

### 5. Superiority — Federal Rule of Civil Procedure 23(b)(3).

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the other Settlement Class members' claims. The burden and expense of individual prosecution makes a class action superior to other available methods of resolution. Thus, absent a class action, Plaintiff contends it would be difficult, if not impossible, for individual members of the Settlement Class to obtain effective relief.

In sum, the Settlement Class meets the requirements of Rule 23(a) and 23(b)(3) and should be certified.[5]

## V.   THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE FINAL APPROVAL.

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996); *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Courts look upon the settlement of lawsuits with favor because such settlements promote "the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United of DuPage Ctny. v. Vill. Of Addison, Ill.*, 988 F.Supp. 1130, 1149 (N.D. Ill. 1997). Indeed, compromise is particularly appropriate in complex class action cases. *See id.*

In determining whether a district court should exercise its discretion to approve a class settlement as "fair," the Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement," *Isby*, 75 F.3d at 1198-99 (citing *E.E.O.C. v.*

---

[5] As detailed in the Settlement Agreement, Rx Security does not oppose the request for class certification solely for the purposes of settlement.

*Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985)), and has identified several factors for analyzing whether a class action settlement should be given final approval including: (1) the strength of the plaintiffs' case on the merits measured against the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; and (5) the stage of the proceedings and the amount of discovery completed. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also, e.g.*, *Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 818 (N.D. Ill. 2002). In weighing these factors, the district court should "recognize[] that the first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199.

The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also Hiram Walker*, 768 F.2d at 889 *cert. denied*, 478 U.S. 1004 (1986); *Isby*, 75 F.3d at 1196-97. Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196.

Likewise, the Seventh Circuit has urged district courts to be mindful that "[t]he essence of settlement is compromise," so "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889. Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs."

-11-

*Isby*, 75 F.3d at 1200. Analysis of all these factors weighs in favor of finally approving the Settlement.

### A. Strength of the Case Measured Against the Settlement

The "most important factor relevant to the fairness of a class action settlement" is the "strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Plaintiff alleges that Rx Security violated the TCPA by sending unsolicited advertisements *en masse* to thousands of facsimile machines throughout the United States. Class Counsel and Plaintiff believe they have a strong case that Rx Security's conduct constituted a violation of the TCPA.[6] Plaintiff believes that through discovery and independent investigation, it would be able to establish at trial that Rx Security's actions were unlawful.

While Plaintiff believes in the strength of its case, it must, however, realistically acknowledge several factors which counsel in favor or acceptance of this Settlement. For instance, Rx Security contends that it had consent to send the faxes. If Rx Security satisfies the criteria of consent, Rx Security's facsimile activity may not be unlawful under the TCPA. *See Craftwood Lumber Co. v. Interline Brands, Inc.*, 2013 WL 4598490, at *1 (N.D. Ill. Aug. 29, 2013) (Grady, J.) ("There are two defenses to a Junk Fax Act claim: prior express invitation or permission ('PEP') and established business relationship ('EBR')."). Furthermore, Rx Security

---

[6] When analyzing a settlement, a court should take counsels' and the parties' views into account. *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.") (internal citation and quotations omitted); *In re RJR Nabisco, Inc. Secs. Litig.*, Nos. MDL No. 818 (MBM), 88 Civ. 7905 (MBM), 1992 WL 210138, at *4, (S.D.N.Y. Aug. 24, 1992) (court "should give deference, when considering the fairness of the proposed settlement, to the judgment of experienced class counsel"); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (holding that in analyzing a class settlement, a trial court may rely on the judgment of experienced counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"). Also significant is the fact that Zydus and its counsel support this Settlement. *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308, 316 (S.D.N.Y. 1969) (the Court may consider the views of all involved counsel when deciding whether to approve a settlement).

asserts that the faxes were not advertisements, but rather transactional communication, and thus not prohibited by the TCPA. In addition, Rx Security asserts Plaintiff is barred by various equitable doctrines under Rule 8(c)(1) of the Federal Rules of Civil Procedure. Rather uniquely, Rx Security also contends that Canadian law applies, and there is no Canadian counterpart to the TCPA. Clearly, one of the factors to be considered as to the fairness of a class action settlement is a defendant's willingness and ability to mount just such a vigorous defense.

Furthermore, Rx Security may successfully challenge class certification on a contested basis. For example, if Rx Security demonstrates that either PEP or EBR applies to Plaintiff, then both the typicality and adequacy elements of Rule 23 are jeopardized. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation. The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer.").

"[G]iven the variety of circumstances in which such numbers may be distributed (business cards, advertisements, directory listings, trade journals, or by membership in an association), it [is] appropriate to treat the issue of consent in any complaint regarding unsolicited facsimile advertisements *on a case-by-case basis* " and that "express permission to receive a faxed ad requires that the consumer *understand* that by providing a fax number, he or she is agreeing to receive faxed advertisements." *CE Design*, 637 F.3d at 726 (quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 F.C.C.R. 14014, 14129 (F.C.C. 2003), 2003 WL 21517853) (emphasis original). *But see Ira*

-13-

*Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients."), *reh'g denied* (Sept. 24, 2013), *cert. denied*, 134 S. Ct. 1318 (2014).

Similarly, Rx Security's PEP and EBR defenses may impede the predominance element of Rule 23. *See G.M. Sign, Inc. v. Brink's Mfg. Co.*, 2011 WL 248511, at *8-9 (N.D. Ill. Jan. 25, 2011) ("[W]ere the Court to certify the Complaint's proposed class, it would have to engage in a class-member-specific inquiry to determine whether each recipient did indeed give permission or have an established business relationship with Defendant at the pertinent time. . . . [I]t seems unavoidable that the Court would have to conduct a series of mini-trials to determine the facts of prior business relationships and consent. It would have to do so both to establish the population of the class, and to determine liability."); *Gene & Gene L.L.C. v. BioPay, L.L.C.*, 541 F.3d 318, 326 (5th Cir. 2008) ("[T]he plaintiff had "failed to advance any viable theory employing generalized proof concerning the lack of consent with respect to the class . . . this leads to the conclusion that myriad mini-trials cannot be avoided."); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) ("Because Kenro's class definition would require the court to conduct individual inquiries with regard to each potential class member in order to determine whether each potential class member had invited or given permission for transmission of the challenged fax advertisements, Kenro has failed to meet the requirements of Rule 23(a).").

To be clear, Plaintiff is not suggesting that class certification would be impossible here. But, we are acknowledging what we must: the issues of PEP and EBR loom large in TCPA cases such as this, where Rx Security has contended that the recipients of the faxes at issue each gave their permission to receive the faxes. If we proceeded all the way through fact discovery and

briefed class certification on a contested basis, and if the Court were to deny class certification, the Class would get *nothing*. And even if a Class were certified, we would still have to continue prosecuting the case to prevail on liability – which Rx Security would surely challenge based not only on the content of the fax, but also on the grounds that the fax campaign was orchestrated by a third-party for which it is not vicariously liable. These litigation risks, coupled with the substantial material benefits the Settlement will garner for Settlement Class Members, weigh in favor of final approval of the Settlement. While Plaintiff believes in the strength of its liability case, it must realistically recognize that a finding of no liability is possible.

Also, the sheer amount of time it will take to litigate the case to conclusion weighs in favor of accepting the Settlement now. Under this Settlement, the Settlement Class will realize substantial and immediate benefits once the Settlement is approved. As explained above, the Settlement allows Settlement Class Members to receive monetary relief. While Plaintiff believes that its claim for maximum statutory damages under the TCPA is strong, Plaintiff is also aware of the inherent risks and costs of continuing with complex litigation of this nature. If Rx Security were to prevail on any of its asserted defenses, Settlement Class Members, including Plaintiff, would receive no relief *at all*. Given this possibility, a monetary payment of $20 per Settlement Class Member is a meaningful achievement. Indeed, Judge Kennelly's discussion on other settlements further illuminates why the relief here is meaningful and fair:

> In *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006), the proposed settlement provided class members with $1, as compared with the potential for statutory damages of $100 to $1,000 per person, while providing $3,000 to the class representative. In *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000), the 200,000 class members were to get nothing, and the class representative was to receive $2,000. And in *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013) the class members were offered what the court called "nothing but illusory injunctive relief," whereas the class representatives were offered $1,000 per child who had used the product. The same is not true here.

-15-

*See In re Sw. Airlines Voucher Litig.*, 2013 WL 4510197, at *5 (N.D. Ill. Aug. 26, 2013). Unlike *Murray*, *Crawford*, and *In re Dry Max*, Class members are getting actual, meaningful relief in the form of $20 – cash – and an injunction against Rx Security. Accordingly, the Settlement provides a tangible benefit to all those affected by Rx Security's alleged violation of the TCPA.

In all events, a settlement will not be rejected simply because it does not provide a complete victory to the plaintiffs (assuming that "complete victory" could be defined within the context of this litigation). *See Hiram Walker*, 768 F.2d at 889. While it might be possible that, if the case were litigated to a conclusion, some class members would be able, at some unknown point in the future, to obtain a greater recovery through individual proceedings, it is also possible they could get less or nothing at all. Moreover, that recovery would be years in the future, at significantly greater expense to the Class. There is a significant risk that the Class would receive less or nothing at all if litigation proceeded to the bitter end.

This first factor – which the Seventh Circuit has reiterated is "the most important" one, *Isby*, 75 F.3d at 1199; *Hiram Walker*, 768 F.2d at 889 – weighs strongly in favor of approving the Settlement because the class would receive substantial benefits despite Rx Security's colorable defenses. A comparison of the many obstacles to success on the merits in this class action against the monetary and other benefits contemplated by the Settlement Agreement supports the conclusion that this Settlement is fair, reasonable and adequate.

### B. The Complexity, Length, and Expense of Continued Litigation

Due to the nature of Plaintiff's case, trial will require the collection of evidence and witness testimony from across the country. Both Parties would examine a number of Rx Security's current and former employees. Rx Security intends to assert a number of affirmative defenses that it contends bar Plaintiff's claim in whole or in part. Rx Security would present –

-16-

and Plaintiff would necessarily attempt to rebut – evidence and testimony on whether individual Class members provided prior express consent to or had an existing business relationship with Rx Security. The uncertainty as to whether these affirmative defenses apply in this case creates substantial risk for both sides. Plaintiff and proposed Class Counsel also recognize that the expense, duration, and complexity of protracted litigation would be substantial, and would require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses.

### C.  The Amount of Opposition to the Settlement

Since this Court granted preliminary approval of the Settlement on July 16, 2014, *no individuals or Attorneys General have objected to the Settlement* and *six individuals or entities have opted out*. (*See* Hamer Decl. ¶¶15, 16 .) Thus, there has been no opposition to the settlement. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F.Supp.2d 935, 961 (N.D. Ill. 2011) ("[I]t is illuminative that only a tiny fraction of the Class Members saw fit to opt out or to object."); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that "99.9% of class members have neither opted out nor filed objections. . . is strong circumstantial evidence in favor of the settlements"), *aff'd,* 267 F.3d 743 (7th Cir. 2001). Thus, this factor weighs strongly in favor of final approval.

### D.  The Lack of Collusion in Reaching a Settlement

Courts generally presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion in the absence of evidence to the contrary. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325. This presumption is applicable here. The Settlement was reached only after nearly six months of settlement discussions. (*See* Siprut Decl. ¶7.)

-17-

This Settlement is not the result of collusion between the parties to compromise the rights of absent class members. Recently, the Seventh Circuit reversed approval of a settlement where it held "almost every danger sign" was present. *Eubank v. Pella Corp.*, 753 F.3d 718, 728 (7th Cir. 2014). Specifically, the Seventh Circuit found the following issues: fatal conflicts of interest; opposition by named plaintiffs; a provision requiring class members to risk recovering nothing by submitting their claims to arbitration, where the defendants had reserved defenses, in order to be eligible for any meaningful settlement distribution; an award of only coupons to a portion of the class; twelve- to thirteen-page claim forms requiring class members to submit "a slew of arcane data, including the "product identity stamp," "Unit ID Label," and purchase order number of the product at issue; and an unnecessarily complex settlement notice. *Eubank*, 753 F.3d at 721. None of these danger signs are present here. Neither Plaintiff nor Counsel has a conflict of interest. (*See* Siprut Decl. ¶12.) The only named Plaintiff supports the Settlement. And most importantly, Class members were not subjected to providing a slew of arcane data or fill out a 12- to 13-page claim form to receive a benefit. Under the Settlement, Class members needed to only file a 2-page Claim Form with 6 questions to receive a cash benefit of $20. Where – as here – the class members receive immediate and meaningful relief, courts have approved the settlement is fair. *See, e.g.*, *Hall v. Bank of Am., N.A.*, 2014 WL 7184039, at *6 (S.D. Fla. Dec. 17, 2014) (approving settlement after examining objectors' arguments based on *Eubank*). Simply put, this Settlement resulted in all Settlement Class Members getting certain, immediate and meaningful benefits.

### E.  The Stage of the Proceedings and the Amount of Discovery Completed

The last factor to be considered by the Court is the stage of the proceedings and the amount of discovery completed. While the Parties have informally exchanged information critical to evaluating the strength of Plaintiff's contentions (and Rx Security's defenses), the

amount of *formal* discovery taken is not a prerequisite to a class action settlement. Courts have noted that, "the label of 'discovery' [either formal or informal] is not what matters. Instead, the pertinent inquiry is what facts and information have been provided." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2007) (internal citation omitted); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 2010) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted." (emphasis omitted)); MANUAL FOR COMPLEX LITIGATION (Fourth), § 11.423 (2004) (noting that informal discovery is a recognized method of minimizing the cost, delay and burden associated with formal discovery).

Here, ample information and data was exchanged both as part of formal discovery *and* as part of the informal discovery processes undertaken for settlement purposes. Class Counsel requested, and Rx Security provided, information concerning the size of the Class and the nature of the faxes. Class Counsel was thus well-equipped not just to make the decision whether to settle on behalf of the Class, but also what the terms of such settlement would be.

## VI.   THE COURT-APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS

The Parties effectuated class notice in a reasonable manner that was calculated to reach as many Class Members as possible who would be bound by the Settlement. In this case, direct and website notice was available for the Class. The notice plan approved by the Court on August 29, 2014 (Docket No. 28) provided the best notice practicable to apprise the Settlement Class of the pendency of this Litigation, afforded them an opportunity to opt out of or present any objections to this Settlement, and complied fully with due process, as already found in the Preliminary Approval Order. *Id.*

-19-

Rx Security and its retained Settlement Administrator – Heffler Claims Group ("Heffler") – provided the Class with Notice of the proposed settlement by the following methods, previously approved by the Court:

- **Facsimile Notice**. On October 13, 2014, Heffler transmitted the Notices and Claim Forms, via first-class mail to the Settlement Class Members. Transmission was unsuccessful for 6,843 fax numbers. After recognizing an inadvertent typographical error, a corrected Notice was transmitted to the previously successful 50,924 fax numbers. (*See generally* Hamer Decl. ¶10.)

- **Email Notice**. On October 16, 2014, Heffler sent an email blast of the Notice to 1,915 of the 6,843 Class Members whose original faxes Notice was unsuccessful and for whom Heffler had an email address listed in the Class List. (*See id.* ¶11.)

- **Mail Notice**. On October 31, 2014, Heffler printed and mailed 812 Class Notices via postage prepaid, first-class U.S. Mail to Class Members who did not receive a Class Notice via fax or email, and for whom Heffler had a mailing address listed on the Class List. (*See id.* ¶12.) Accordingly, Heffler deemed 5,289 Class Notices out of 57,767 unique Class Member records as undeliverable. (*See id.* ¶13.)

- **CAFA Notice.** On July 22, 2013, Heffler sent the Notice to the officials of each State in which a Settlement Class Member resides, and the appropriate Federal official. None of the CAFA Notices were returned as undeliverable. (*See id.* ¶6.)

- **Internet Posting**. On or about October 13, 2014, Heffler set-up a website at www.PrescriptionPadsTCPASettlement.com and posted documents related to the Settlement and answers to frequently asked questions. Heffler also enabled Settlement Class Members to submit a Claim Form. (*See id.* ¶8.)

- **Call Center.** On or about October 13, 2014, Heffler established a toll-free telephone number (844-271-4782) with an Interactive Voice Response system, through which Class Members could obtain information about the Settlement. (*See id.* ¶9.)

Accordingly, the form and method of notice given to class members satisfies all the legal requirements of Rule 23, as well as the constitutional due process requirements.

## VII.   CONCLUSION

For the reasons set forth above, Class Counsel requests that the Court enter an order granting final approval to the settlement.

Dated: January 15, 2015                    Respectfully submitted,

NORTH SUBURBAN CHIROPRACTIC
CLINIC, LTD., individually and on behalf
of all others similarly situated


By:    */s/ Joseph J. Siprut*
      One of the Attorneys for Plaintiff
      And the Settlement Class


Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.241.1260
www.siprut.com

-21-

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion for Final Approval of Class Action Settlement** was filed this 15th day of January, 2015, via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.

<i>/s/ Joseph J. Siprut</i>

Joseph J. Siprut

4842-9651-4849, v. 1